**EXHIBIT - 1**
(MAILED ENVELOPE FROM THE U.S. ATTORNEY WITH MOTION, DATED 28th day of April, 2006; "Defendants' motion to extend time for filing a responsive pleading and/or dispositive motion".)

U.S. Department of Justice
United States Attorney
Western District of Pennsylvania
U.S. Post Office & Courthouse
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15219

Official Business
Penalty for Private Use $300

ADDRESS SERVICE REQUESTED

Reginald T. Gilbertbey
Reg. No. 03854-078
U.S. Penitentiary, Allenwood
P.O. Box 3500
White Deer, PA 17887

**EXHIBIT - 2**
( " ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES INFORMAL
RESOLUTION FORM", filed on 24 July 2006 )

United States Penitentiary
Allenwood, Pennsylvania

ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMAL RESOLUTION FORM

NOTE TO INMATE: You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9 [BP-229(13)], you must ordinarily attempt to informally resolve your complaint through your Correctional Counselor. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted.

Issued By: _RFWolv_ (Initials of Correctional Counselor)
Date Issued To The Inmate: __6-22-06__

INMATE'S COMMENTS:

1. Complaint: (I HAVE BEEN UNABLE TO FILE THIS EARLIER DUE TO DELAYS AS CONSEQUENCE OF WORK DETAIL, FOG EMERGENCY COUNTS, AND PHYSICAL INJURIES, IN ADDITION TO LACK OF ACCESS TO THE LAW LIBRARY). THE ATTACHED LEGAL MAIL WAS NOT HANDLED IN ACCORDANCE TO BOP POLICIES, AND/OR EVEN FOR REGULAR MAIL, I WAS DENIED THE PROPER HANDLING OF SUCH AND AS CONSEQUENCE SUCH NEGLECT AND INPROPRIATEY HAS ENGENDERED DELAY, PROBLEMS, AND INCREASED DISADVANAGES OF CURRENT CIVIL LITIGATION AGAINST THE BOP AND ITS STAFF. ON (SEE ATTACHMENT PAGE).

2. Efforts you have made to informally resolve: SPOKE WITH UNIT OFFICERS, AND VERBALLY COMPLAINED TO PRISON ADMINISTRATIVE STAFF.

3. Names of staff you contacted: UNIT OFFICER, AND UNIT MANAGER, MR. R. WOLIVER.

Date Returned to Correctional Counselor: __24 July 2006__

_Reginald J. Gittens Bey_    __03854-078__    __7/24/06__
Inmate's Signature            Reg. Number      Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date BP-9 Issued: _____

_____
Correctional Counselor

_____
Unit Manager (Date)

Distribution: If complaint is NOT informally resolved - Forward original attached to BP-9 Form to the Executive Assistant.

ALP-1330.13J
SEPTEMBER 1, 2005
ATTACHMENT PAGE:

USP ALLENWOOD
ALLENWOOD, PENNSYLVANIA
GILBERTBEY, REGINALD T., #03854-078 / CODE: IIA

1. **COMPLAINT:** (CONTINUED) JUNE 18, 2006 SUNDAY AT APPROXIMATELY 11:00 AM I RECEIVED FROM THE UNIT OFFICER A OPENED ENVELOPE FROM THE "UNITED STATES ATTORNEY WESTERN DISTRICT OF PENNSYLVANIA" WHICH CONTAINED A LEGAL MOTION, WHICH I HAD (10) TEN DAYS TO RESPOND TOO. THIS MOTION WAS CERTIFIED AND DATED, "28th day of April, 2006" AND THE POSTMARK ON THE ENVELOPE WAS "MAY-1'06"; FOR ME TO RECEIVE SUCH IMPORTANT LEGAL MAIL APPROXIMATELY (7) SEVEN WEEKS AFTER THIS INSTITUTION HAS INTENTIONALLY VIOLATED MY CONSTITUTIONAL RIGHTS OF ACCESS TO THE COURTS IN ADDITION TO THOSE POLICIES AND PRO-CEDURES MANDATED BY THE BOP FOR THOSE PRISONERS "SIMILARLY SITUATED" AND SHOWS RETALIATION FOR SUCH CIVIL LITIGATION.

*Reginald J. GilbertBey*
Signature of Prisoner

Reg. No. 03854-078     Date: 24 July 2006

Enclosures: Copies of envelope of Legal Mail

file

**EXHIBIT - 3**
( 28 CFR §540.18 thru §540.19 )

**§ 540.15**  **28 CFR Ch. V (7–1–04 Edition)**

not be sealed by the inmate and may be read and inspected by staff.

(c)(1) Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(i) through (iv) of this section, is sent out unopened and uninspected. Staff may open a sentenced inmate's outgoing general correspondence:

(i) If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;

(ii) If the inmate is on a restricted correspondence list;

(iii) If the correspondence is between inmates (see § 540.17); or

(iv) If the envelope has an incomplete return address.

(2) Except for "special mail," outgoing mail from a sentenced inmate in a medium or high security level institution or an administrative institution may not be sealed by the inmate and may be read and inspected by staff.

(d) The Warden may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity. Correspondence which may be rejected by a Warden includes, but is not limited to, correspondence which contains any of the following:

(1) Matter which is nonmailable under law or postal regulations;

(2) Matter which depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption;

(3) Information of escape plots, of plans to commit illegal activities, or to violate Bureau rules or institution guidelines;

(4) Direction of an inmate's business (See § 541.13, Prohibited Act No. 408). An inmate, unless a pre-trial detainee, may not direct a business while confined.

This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment. Thus, for example, an inmate may correspond about refinancing an existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution.

(5) Threats, extortion, obscenity, or gratuitous profanity;

(6) A code;

(7) Sexually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order; or

(8) Contraband. (See § 500.1 of this chapter. A package received without prior authorization by the Warden is considered to be contraband.)

[50 FR 40109, Oct. 1, 1985, as amended at 56 FR 4159, Feb. 1, 1991; 62 FR 65186, Dec. 10, 1997]

**§ 540.15  Restricted general correspondence.**

(a) The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification. Determining factors include the inmate's:

(1) Involvement in any of the activities listed in § 540.14(d);

(2) Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;

(3) Being a security risk;

(4) Threatening a government official; or

(5) Having committed an offense involving the mail.

(b) The Warden may limit to a reasonable number persons on the approved restricted general correspondence list of an inmate.

(c) The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.

(1) Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).

(2) Where there is no incident report, the Warden:

(i) Shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence;

(ii) Shall give the inmate the opportunity to respond to the classification or change in classification; the inmate

560

**Bureau of Prisons, Justice**  **§ 540.18**

has the option to respond orally or to submit written information or both; and

(iii) Shall notify the inmate of the decision and the reasons, and shall advise the inmate that the inmate may appeal the decision under the Administrative Remedy Procedure.

(d) When an inmate is placed on restricted general correspondence, the inmate may, except as provided in §§ 540.16 and 540.17:

(1) Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondence is involved in a violation of correspondence regulations, or would be a threat to the security or good order of the institution;

(2) Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondent to obtain a release authorizing an investigation; and

(3) Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity. Correspondence with former business associates is limited to social matters.

(e) The Warden may allow an inmate additional correspondence with persons other than those on the inmate's approved mailing list when the correspondence is shown to be necessary and does not require an addition to the mailing list because it is not of an on-going nature.

[50 FR 40109, Oct. 1, 1985, as amended at 61 FR 65204, Dec. 18, 1995]

**§ 540.16  Inmate correspondence while in segregation and holdover status.**

(a) The Warden shall permit an inmate in holdover status (i.e., enroute to a designated institution) to have correspondence privileges similar to those of other inmates insofar as practical.

(b) The Warden shall permit an inmate in segregation to have full correspondence privileges unless placed on restricted general correspondence under § 540.15.

**§ 540.17  Correspondence between confined inmates.**

An inmate may be permitted to correspond with an inmate confined in any other penal or correctional institution if the other inmate is either a member of the immediate family, or is a party or witness in a legal action in which both inmates are involved. Such correspondence may be approved in other exceptional circumstances, with particular regard to the security level of the institution, the nature of the relationship between the two inmates, and whether the inmate has other regular correspondence. The following additional limitations apply:

(a) Such correspondence at institutions of all security levels may always be inspected and read by staff at the sending and receiving institutions (it may not be sealed by the inmate); and

(b)(1) The appropriate unit manager at each institution must approve of the correspondence if both inmates are housed in Federal institutions and both inmates are members of the same immediate family or are a party or witness in a legal action in which both inmates are involved.

(2) The Wardens of both institutions must approve of the correspondence if one of the inmates is housed at a non-Federal institution or if approval is being granted on the basis of exceptional circumstances.

**§ 540.18  Special mail.**

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate".

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect,

561

**§ 540.19**

(c)(1) Except as provided for in paragraph (c)(2) of this section, outgoing special mail may be sealed by the inmate and is not subject to inspection.

(2) Special mail shall be screened in accordance with the provisions of paragraph (c)(2)(ii) of this section when the special mail is being sent by an inmate who has been placed on restricted special mail status.

(i) An inmate may be placed on restricted special mail status if the Warden, with the concurrence of the Regional Counsel, documents in writing that the special mail either has posed a threat or may pose a threat of physical harm to the recipient (e.g., the inmate has previously used special mail to threaten physical harm to a recipient).

(ii) The Warden shall notify the inmate in writing of the reason the inmate is being placed on restricted special mail status.

(iii) An inmate on restricted special mail status must present all materials and packaging intended to be sent as special mail to staff for inspection. Staff shall inspect the special mail material and packaging, in the presence of the inmate, for contraband. If the intended recipient of the special mail has so requested, staff may read the special mail for the purpose of verifying that the special mail does not contain a threat of physical harm. Upon completion of the inspection, staff shall return the special mail material to the inmate if the material does not contain contraband, or contain a threat of physical harm to the intended recipient. The inmate must then seal the special mail material in the presence of staff and immediately give the sealed special mail material to the observing staff for delivery. Special mail determined to pose a threat to the intended recipient shall be forwarded to the appropriate law enforcement entity. Staff shall send a copy of the material, minus the contraband, to the intended recipient along with notification that the original of the material was forwarded to the appropriate law enforcement entity.

(iv) The Warden shall review an inmate's restricted special mail status at least once every 180 days. The inmate is to be notified of the results of this review. An inmate may be removed from restricted special mail status if the Warden determines, with the concurrence of the Regional Counsel, that the special mail does not threaten or pose a threat of physical harm to the intended recipient.

(v) An inmate on restricted mail status may seek review of the restriction through the Administrative Remedy Program.

(d) Except for special mail processed in accordance with paragraph (c)(2) of this section, staff shall stamp the following statement directly on the back side of the inmate's outgoing special mail: "The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address."

[50 FR 40108, Oct. 1, 1985, as amended at 62 FR 65185, Dec. 10, 1997]

**§ 540.19 Legal correspondence.**

(a) Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

(b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate". Legal mail shall be opened in accordance with special mail procedures (see § 540.18).

(c) Grounds for the limitation or denial of an attorney's correspondence rights or privileges are stated in part 543, subpart B. If such action is taken,

**Bureau of Prisons, Justice**

the Warden shall give written notice to the attorney and the inmate affected.

(d) In order to send mail to an attorney's assistant or to a legal aid student or assistant, an inmate shall address the mail to the attorney or legal aid supervisor, or the legal organization or firm, to the attention of the student or assistant.

(e) Mail to an inmate from an attorney's assistant or legal aid student or assistant, in order to be identified and treated by staff as special mail, must be properly identified on the envelope as required in paragraph (b) of this section, and must be marked on the front of the envelope as being mail from the attorney or from the legal aid supervisor.

**§ 540.20 Inmate correspondence with representatives of the news media.**

(a) An inmate may write through "special mail" to representatives of the news media specified by name or title (see § 540.2(b)).

(b) The inmate may not receive compensation or anything of value for correspondence with the news media. The inmate may not act as reporter or publish under a byline.

(c) Representatives of the news media may initiate correspondence with an inmate. Staff shall open incoming correspondence from representatives of the media and inspect for contraband, for its qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to Bureau regulations.

**§ 540.21 Payment of postage.**

(a) Except as provided in paragraphs (d), (e), (f), and (i) of this section, postage charges are the responsibility of the inmate. The Warden shall ensure that the inmate commissary has postage stamps available for purchase by inmates.

(b) Writing paper and envelopes are provided at no cost to the inmate. Inmates who use their own envelopes must place a return address on the envelope (see § 540.12(d)).

(c) Inmate organizations will purchase their own postage.

(d) An inmate who has neither funds nor sufficient postage and who wishes

**§ 540.22**

to mail legal mail (includes courts and attorneys) or Administrative Remedy forms will be provided the postage stamps for such mailing. To prevent abuses of this provision, the Warden may impose restrictions on the free legal and administrative remedy mailings.

(e) When requested by an inmate who has neither funds nor sufficient postage, and upon verification of this status by staff, the Warden shall provide the postage stamps for mailing a reasonable number of letters at government expense to enable the inmate to maintain community ties. To prevent abuses of this provision, the Warden may impose restrictions on the free mailings.

(f) Mailing at government expense is also allowed for necessary correspondence in verified emergency situations for inmates with neither funds nor sufficient postage.

(g) Inmates must sign for all stamps issued to them by institution staff.

(h) Mail received with postage due is not ordinarily accepted by the Bureau of Prisons.

(i) Holdovers and pre-trial commitments will be provided a reasonable number of stamps for the mailing of letters at government expense.

(j) Inmates may not be permitted to receive stamps or stamped items (e.g., envelopes embossed with stamps, postal cards with postage affixed) other than by issuance from the institution or by purchase from commissary.

[50 FR 40109, Oct. 1, 1985, as amended at 64 FR 32171, June 15, 1999]

**§ 540.22 Special postal services.**

(a) An inmate, at no cost to the government, may send correspondence by registered, certified, or insured mail, and may request a return receipt.

(b) An inmate may insure outgoing personal correspondence (e.g., a package containing the inmate's hobbycrafts) by completing the appropriate form and applying sufficient postage.

(1) In the event of loss or damage, any claim relative to this matter is made to the U.S. Postal Service, either by the inmate or the recipient. The U.S. Postal Service will only indemnify a piece of insured mail for the actual